The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, Council. Welcome to the Ninth Circuit. Before we hear our first case for argument, we have three matters to be submitted. They are Cardenas-Ruiz v. Bondi, Alexandra Romero v. Bisignano, and Broca v. Bisignano. The first case for argument today is Group 14 Technologies v. Nexeon Limited, and I believe that, I guess, Mr. Al-Salam, you're first, right? That's correct, Your Honor. All right, please proceed. Thank you, Your Honor. This is Ramzi Al-Salam of Perkins Coie, and I'm also accompanied by my colleague, Jesse Della Sensori, who's not on camera. Group 14 respectfully requests that the Court vacate the District Court's grant of summary judgment on Group 14's trade secret and contract claims and remand with the instruction that Group 14 be given an opportunity for discovery. The Court's summary judgment order— May I ask you this? Perhaps I misread this, but my review of the record suggests that literally tens of thousands of pages of documents have already been submitted, reviewed, and this is like the third round. Is that wrong? I don't believe we obtained tens of thousands of pages from the defendant. What happened was we had two motions to compel discovery that were denied. The defendant did voluntarily produce some documents. No depositions were taken because we were waiting to get a full document production before we took depositions. I thought three depositions were taken. Is that wrong? Oh, I apologize, Your Honor. I meant Group 14 did not take any depositions of the defendants. Defendants took depositions of plaintiffs. But clearly, this is a situation, if I understand correctly, where people weren't just sitting around twiddling their thumbs. There was a lot of discovery going on. Maybe not all on one side or the other, but there was just a lot of discovery going on for quite some period of time. Is that correct? I would dispute that characterization because plaintiffs— Group 14 never had an opportunity to get fulsome discovery from the was filed shortly after the court denied Group 14's motion to compel and was decided before the end of the discovery deadline. If I understand correctly, that was because when you looked at the nature of the inquiry, the court found it so vague, so undeterminable that they couldn't order it. Is that right? What's right, Your Honor, is the court found that Group 14 had not identified with reasonable particularity its trade secrets and for that reason refused to compel discovery and then invited defendant to bring a summary judgment motion on the trade secret claims and on the contract claim to the extent it relied on trade secrets. Now, our largest concern and the limited time is that one of the court's principal errors was dismissing on summary judgment the contract claim. That was both internally inconsistent with the court's order and it ignored evidence in support of other aspects of the contract claim. Did the court dismiss that because they thought it was precluded by the UTSA? No, the court did not express that as the basis for dismissing the contract claim. The court did believe wrongly, we suggest, that the contract claim was premised only on trade secrets. It wasn't. The contract is much broader in at least three ways than the trade secret claim. First, both as a matter of law that a contract can protect information that it doesn't rise to the level of a trade secret and in this case specifically does. In this case, the contract protects materials that we provided them, physical materials, which were silicon carbon composites as samples and also protects any substances that they derive in whole or part from those materials. It also protects confidential information and unlike a trade secret claim, it shifts the burden. It says if we designate information as confidential and they don't think it is, they have to conclusively demonstrate that it's not confidential. When the district court dismissed the trade secret claim, the district court clearly put the burden on group 14 to establish the trade secrets that it had identified were both trade secrets and had been disclosed to the defendant. This is the opposite of the burden under the contract claim. In addition, trade secret misappropriation isn't based on retaining trade secrets. If I find a trade secret in the street and just keep it, I have not misappropriated it. But the contract claim, as the district court found, requires fines that you retain the materials or confidential information once the contract is terminated. Let's take that as a given. As I understand it, there was a point when the two CEOs or senior people on both sides talked about a possible acquisition. That failed. At that point, presumably, whether you call it a contract claim or a trade secret claim, there was a requirement that the Nexion folks were supposed to return that to your company and they didn't do that. What impact does that have in your view? If the contract were terminated and they did not return the confidential information and materials, they were in breach of the contract. That put you on notice, right? That put you on whether or not we were going to have an acquisition or a merger. That was part of the reason they were looking at our materials, but the contract was related to them evaluating our materials for possible combination or use. The talks about a merger collapsed in January of 2018, but the parties continued to talk about their use of our products. They even asked for more samples in August of 2018. The collaboration in terms of their evaluation of our materials continued past the break-off in the merger talks. What the judge found is that they ended in November of 2018. He based that on a phone conversation on November 8, 2018, for which there is no testimony. He based it on the handwritten records of our executive, Mr. Luby. In there, it says no sample. It says IP contamination. Even though there's no dispute, they never said, we're ending this collaboration. We're terminating this agreement. That never happened. What role should the Sunrise application play in our evaluation of the trade secret misappropriation claim? The Sunrise application is relevant because in the Sunrise application, it's a confidential application, but they said that one of the ways they were going to solve their problem and come up with the technology was to work with a U.S. company, which nobody disputes is Group 14. They were relying on the use of our materials or in connection with getting that £7 million investment. In the short time I have, I want to focus on the other, more important aspect of the breach of contract. First of all, I do want to stress that, as Judge Smith said, if the district court is right and the agreement terminated implicitly on November 2018, then they are in breach by retaining the information, to this day, retaining our materials and information. But the stronger and more important breach has to do with their development of their competing product. It's called NSP2. That's the product that they developed. It's the product that they're talking about in the Sunrise application. We respectfully submit that even without a true opportunity for discovery, there is significant evidence that NSP2 was developed, at least in part, using our confidential information and materials. In fact, I know there's a lot to go through in the record, but I'd like to point out— I'm sorry for interrupting you because your time is running short. For statute of limitations purposes, there is a requirement that due diligence be exercised. Was there any due diligence exercise in this particular case? If not, then what excuses you from that requirement? Okay. First of all, this statute of limitations doesn't apply to the contract claim. I just want to make sure everybody understands that. It's the contract claim I'm focusing on in terms of due diligence. We respectfully submit that we believed that if they intended to terminate the agreement, that they would have said it, and they would have returned our materials. We did not believe that the collaboration had ended. In our brief, we have cited further communications, which indicated that the collaboration might continue. In addition, I want to emphasize this again. There's no testimony about that conversation that occurred. Their own internal notes—Nexion's internal notes—show that their IP director said that we don't want to sample at this time because it might contaminate our patent applications. Let's first file our patent applications before we get a sample. In the record, there is evidence that this was just a temporary time that they did not want to receive a sample, and that they were at least contemplating, at that time, getting a sample later, after they had filed their IP. I do want to emphasize— I know you have a lot to cover, but you're running out of time. You can go forward or save some time for rebuttal. If you want to save time for rebuttal, one of the things I appreciate you're doing is addressing the fact that, at least the district court felt, and I feel as somebody who practiced this kind of law for many years, the definitions of trade secrets are just terrible—so general, so vague, so inconclusive. I'd like you to address that when you get to a rebuttal, if you will, please. Thank you, Your Honor. I will say this. We believe that the requirement of identifying trade secrets is for discovery. It shouldn't be converted into a summary judgment motion, where we have to prove our case in response to a motion to compel. But I do want to emphasize the evidence that supports our position that there's an issue of fact as to whether or not they used our materials in connection with developing their competing product. And that includes their two board presentations, where they said they couldn't solve the problem and they recommended to their own board that they use our materials. Those are at 5-ER947 at pages 948 and 966. At 4-ER682 at page 684, it says the recommendation is to accelerate time to market by accessing a silicon composite material technology from group 14. There's also a board type materials for use in their technologies. Then, even as late as July of 2019, at 5-ER1145, they were comparing our materials with the NSP2 product they were using. This in itself, and we also know this, we know the same people that developed NSP2 had access to our materials and information. There's at least enough evidence for a jury to infer that they used our information, at least in part, in developing NSP2. So, we really would like the court to emphasize or focus on whether there was sufficient evidence because that issue was not even addressed in the district court summary of the judgment order. Yet, it's the most important issue for my client, whether its competitor used its confidential information in developing a competing product. I'll save the last minute for rebuttal. Very well. All right. Mr. Levy, please. Thank you, Your Honor, and may it please the court. The district court gave group 14 multiple chances with the assistance of discovery to define trade secrets and to separate what it claimed to be confidential information from public patents, which is consistent with multiple cases of this court. It found those deficient, and it then invited the parties to consider NXIV on related file a summary judgment motion on those claims and a derivative claim, which is exactly what this court recently said in Quintaro should have happened, and so that's what did happen. My client moved for summary judgment on all the claims because the contract claims and the other claims were derivative of the trade secret claims, and the court entered summary judgment on all of them. In the briefing below, the summary judgment motion says that the contract claim is fully derivative and that no confidential information independent of patents is identified. There's really no response in the opposition brief below, and on appeal here, there is no effort really to identify any confidential information separate from the public patents that would help support either a trade secret case or a breach of contract case. Do I understand correctly, then, from what you're saying and basically, frankly, what I read in the briefs that the district court concluded that based upon the actual language of the contract, that what was shared here was either already known or was in publicly available or something of that nature, or was so vague and indefinite that you couldn't enforce it. Is that essentially correct? That's exactly right. That's what we argue. That's what the district court found. It went through multiple occasions of reviewing the trade secret definitions, and on summary judgment, evaluate whether there would be a fact dispute as to whether there was any confidential material other than what was disclosed in patent or so vague as to not be sufficiently protectable. I note that in the briefing, my friends identify zero instances of confidential information that wasn't publicly disclosed in patents. They have an example of trade secret D in their brief. We explain in our brief why everything was already disclosed about that trade secret, and they just drop the point on reply. I think on this appeal, it's all but conceded that the trade secrets aren't adequately defined. Now, my friend says the court should focus on the contract claims. As I said below, we argued that they were coterminous, and so defeating one would lead to defeating the other. My friend says that there are at least four reasons that that's not true. I think he stressed those really on reply. The first is that they have a claim for breach of contract based on the improper retention of information. That was not a theory pressed below as a reason to oppose summary judgment, and so that's waived. It's not a purely legal question. If they had said that the court should decline summary judgment on that question, we would have put in a response that's partly factual in the reply, so it's not properly presented now. They just didn't make the argument below. Let me ask you this, counsel. Let me ask you this. I want to make sure that I understand sort of the procedural history of this because one of the issues raised is the denial of the 560 for discovery. So the parties had about a year's worth of discovery by the time the summary judgment motion was filed because what was a little unusual to me in this case from a procedural standpoint is that the court had asked for a joint status report and the summary judgment motion was essentially filed at the same time. It's some kind of an accelerated timeline. On this record, I think the appellants have some pretty tough arguments on the merits of the summary judgment, but I want to make sure that there's no irregularity in the that the summary judgment timeline was handled that we should be concerned about. What's your response to that? So I have a couple of reactions. Number one, in the recent decision on the trade secret definitions in Quintara that my friends highlighted in their reply, there was an issue of the definition and the court entered as a dismissal of trade secret case as a discovery sanction. The court reversed that and said what should happen in that circumstance is that the and that's what happened here. So the court went through this multiple iterations, gave them multiple options to define the trade secrets, found those definitions wanting, and in the last order on the motion to compel, provided that the court that they should consider the next time should consider filing a summary judgment motion. So it's exactly what should have happened. Then we did file a summary judgment motion and that triggers rules under Rule 56. It's their burden to come up with evidence to show there's a fact dispute and if they think they need discovery, that's what Rule 56d is for. And Rule 56d is very specific and the cases that of this court interpreting Rule 56d are very clear. It is their burden in opposing a summary judgment motion to put in an affidavit that specifically identifies particular facts that are in need of discovery, why they are essential to oppose summary judgment, and to do that in an affidavit. And the affidavit here, and it's in the record at 2er40, it does none of those things. It says in paragraph 11, it identifies one to six bullet points and says that before opposing summary judgment, group 14 would ideally have preferred to have completed and or taken at least the following discovery. And then there's a list of broad discovery, nothing specific. So there's no proffer of any specificity that would normally be required under 5060. That's your argument, right? That's right. And so that's what they would have to show below. And on appeal, of course, it's reviewed for abuse of discretion. And given the showing that was made on the affidavit, it is not a close question. We have other arguments in our brief about why discovery here would be futile anyway, because they are charged with their own knowledge of their own secrets, and of how those are distinct from patents. And so they don't need discovery to do that. They also don't need discovery to explain why they met the discovery rule, which was their burden, why there was a fact dispute on that. And, you know, as we pointed out below, they identified nothing that happened after 2018. And they would have had to show discovery before 2019. So I don't think the discovery question is a close one. With respect to unless, Your Honor, you have more questions on discovery, I did just want to briefly address the points on the contract. My friend says they also have a claim with respect to material, not just confidential information. The only claim that they leveled below on material, as we point out in our opposition brief, relates to sharing material with two universities, Oxford and UCL. The district court addressed those arguments and said that those that the sharing of those materials did not breach the contract. And it's a theory that they expressly abandoned on appeal. So that's the only theory they press below. I don't think they can properly raise a new argument on material on appeal. Same thing for material that's derived from information. First of all, that theory fails because if there are no confidences, then there would be nothing that would be subject to the derivation provisions that they cite. But again, they didn't rely on this below. And same thing with, they say it was our burden to identify, to show that the confidences were in the public domain. This is also not an argument they raised below. And I don't think it's a close question. We proffered the patents. The court looked at everything. Whoever has the burden, there's no fact dispute. I don't think they even try to show that there's a fact dispute here. So these are all, I don't think these get my friends anywhere. Unless the court really has further questions, I think we're content to rest on our papers. I think the discovery issue is easily resolved by governing law and just looking at the affidavit, which is very generic. The trade secret definitions are vague and they don't identify confidences. And they don't, my friends don't even try to show otherwise. The only arguments they make are by the time of the reply, they're forfeited. Basically, they don't go back there. And the contract claims, they're just trying to come up with new contract claims that they didn't make below. So I would urge the to affirm in all respects. Any other questions by my colleagues? Thank you. I think not. Okay. So Mr. El Salam, you have a minute, I think, roughly to rebut. We're not hearing you. Are you muted there? I'm sorry. There we go. The argument is being made that we waived our position that they retained our information in breach of the agreement. As we point out on page 26, I mean, 23 of our reply brief, the courts have said the issue on waiver is whether the district court had an opportunity to address it. The district court clearly addressed it. It relied on it. It relied on the fact that they had breached their contract in finding that the trade secret claim was time barred. So it's not a waiver of the retention claim. This idea that everything we gave them was in the public domain, that doesn't even apply to materials. Materials, it's in the contract. First of all, they have to conclusively demonstrate that what we provided them is in the public domain. That burden was never applied in the trade secret burden. And we do not agree that we did not argue that they used our materials. In page 638 of the record, on the summary judgment motion, we argued that they had used group 14's materials for its own gain and for granting funding and patents. And we have identified... All right. I apologize. I know that you want to say a whole lot more, but your time is up. Let me ask my colleagues whether either has additional questions for Mr. Al-Salam. I don't. Thank you. All right. We thank both counsel for your argument. We realize that there's lots more you can say, but that the nature of our business here is time limited. So the case just argued is submitted.
judges: SMITH, NGUYEN, THOMAS